<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GARY CAMPBELL,**<br>**A37-777-481,** | 04-CV-4443 (WJM) |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **JOHN ASHCROFT et al.,** | |
| **Respondents.** | |

Regis Fernandez
18 Green St., 3rd Floor
Newark, New Jersey 07102

      (*Attorney for Plaintiff*)

Peter G. O'Malley
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102

      (*Attorney for Defendant*s)

**MARTINI, U.S.D.J.:**

      Petitioner brings this habeas corpus petition seeking judicial review of the Board of

Immigration Appeal's ("BIA's") August 10, 2004 decision ordering that he be removed to

Jamaica. Petitioner challenges the BIA's decision that his conviction for attempted menacing in

the second degree is a crime involving moral turpitude under § 237(a)(2)(A)(ii) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(ii), and that a waiver of

inadmissibility under former § 212(c) cannot be granted in conjunction with a cancellation of

removal under § 240A(a), 8 U.S.C. § 1229b(a).  Also before the Court is the government's motion to dismiss Petitioner's Verified Complaint and Habeas Corpus Petition.  For the following substantive reasons, the Court affirms the BIA's decision and dismisses Petitioner's Verified Complaint and Habeas Corpus Petition in its entirety.[1]

## BACKGROUND

Campbell is a native and citizen of Jamaica.  Campbell legally entered the United States in 1982 as a lawful permanent resident.  He has four criminal arrests resulting in four criminal convictions.  On August 15, 1990, he pled guilty to attempted criminal sale of a controlled substance (cocaine) in the third degree in violation of N.Y. Penal Law § 220.39.  On that same date, he also pled guilty to criminal possession of stolen property in violation of N.Y. Penal Law § 185.20.  On December 14, 1994, he was convicted of aggravated unlicensed operator in the third degree.  And on January 9, 2002, Petitioner pled guilty to attempted menacing in the second degree in violation of N.Y. Penal Law § 120.14.

The menacing conviction arose out of a verbal dispute that took place on November 29, 2001.  During that dispute, Campbell pointed what appeared to be a gun at another person and verbally threatened to kill that person.  The gun used in the incident was not an actual gun, but a cigarette lighter shaped in the form of a gun.

---

[1]The habeas corpus petition is also procedurally defective.  An application for habeas relief under 28 U.S.C. § 2241 requires that the petitioner submit such application "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  Although Petitioner's complaint is labeled "Verified," he, or someone on his behalf, failed to verify it.  Thus, his application for habeas corpus did not comply with § 2242.

On March 12, 2002, the Immigration and Naturalization Service ("INS")[2] issued a Notice of Appearance, charging him with removability under § 237(a)(2)(B)(i) and § 237(a)(2)(A)(iii), which allow removal of an alien for convictions relating to a controlled substance and an aggravated felony, respectively.  These charges were based on his pre-1996 convictions.  On November 18, 2002, Campbell was charged with being removable under § 237(a)(2)(A)(ii) which allows for removal of an alien convicted of two or more crimes involving moral turpitude. This charge relied in part on the allegation that Campbell's menacing conviction was a crime involving moral turpitude.[3]

Before the Immigration Judge ("IJ"), Campbell conceded removability but applied for waiver of removal under former § 212(c) and cancellation of removal under § 240A(a).  The government moved to pretermit the waiver and cancellation applications.  On February 27, 2004, the IJ issued an oral decision holding that the menacing conviction constituted a crime involving moral turpitude and pretermitting the waiver and cancellation applications.  Campbell timely appealed the decision to the BIA.  On August 10, 2004, in a written decision, the BIA affirmed the IJ's decision and dismissed the appeal.

Rather than seek judicial review under 8 U.S.C. § 1252(b) within thirty days of the BIA's decision, it appears that Campbell purposefully allowed that time to lapse in order to expedite his habeas corpus petition.  Campbell filed his habeas corpus petition on September 14, 2004.  In

---

[2]The INS is now referred to as the Bureau of Citizenship and Immigration Services, which is a part of the Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 451, 116 Stat. 2135, 2195 (2002) (codified at 6 U.S.C. § 271).

[3]The other crime involving moral turpitude on which this charge relied was Campbell's conviction of attempting to sell a controlled substance.

response, the government filed its answer and request to dismiss the petition.  This Court has jurisdiction to review the habeas corpus petition under 8 U.S.C. § 1252(c) and 28 U.S.C. § 2241. *See Chmakov v. Blackman*, 266 F.3d 210, 213 (3d Cir. 2001) ("district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses").


**STANDARD OF REVIEW**

A district court's review of a habeas proceeding brought under § 2241 "must be confined to questions of constitutional and statutory law."  *Bakhtriger v. Elwood*, 360 F.3d 414, 424 (3d Cir. 2004).  A court may not engage in "the broader species of review for substantial evidence and abuse of discretion typical of APA challenges."  *Id.* at 423; *see also Cadet v. Bulger*, 377 F.3d 1173, 1184 (11th Cir. 2004) (citing *Bakhtriger* and stating that "[a]ll circuit courts to decide the scope of habeas review . . . have concluded that habeas review of administrative factual findings or the exercise of discretion is impermissible"); *Latu v. Ashcroft*, 375 F.3d 1012 (10th Cir. 2004) (holding that the district court did not have habeas jurisdiction to review the attorney general's discretionary decision to commence proceedings in a particular city).  "[A]lthough review of a matter of law encompasses deciding whether legal principles have been properly applied to undisputed facts, it does not encompass deciding the factual issues themselves." *Bakhtriger*, 360 F.3d at 425 (citing *Ogbudimkpa*, 342 F.3d at 222).

A district court exercises plenary review when determining whether a particular crime involves moral turpitude.  *Knapik v. Ashcroft*, 384 F.3d 84, 88 (3d Cir. 2004).

**DISCUSSION**

**I.      Menacing In The Second Degree Is A Crime Involving Moral Turpitude**

An alien is removable if he has been "convicted of two or more crimes of moral turpitude" which do not arise out of a common scheme of misconduct.  8 U.S.C. § 1227(a)(2)(A)(ii).  Because Campbell does not contest that his conviction for attempted sale of a controlled substance is a crime involving moral turpitude, the issue presented is whether a conviction for attempted menacing under N.Y. Penal Law § 120.14 is a crime involving moral turpitude.

Although Congress did not see fit to define "crime involving moral turpitude," the BIA has provided the following explanation regarding the contours of this nebulous concept:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.  Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.  Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

*Matter of Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999) (citations omitted).  The Third Circuit has found this explanation to be reasonable.  *Knapik*, 384 F.3d at 89.

The BIA uses a two-step test to determine whether a crime involves moral turpitude.  The first step is to use the categorical approach, which focuses solely on the underlying criminal statute, not the alien's misconduct.  *Id.* at 88.  The BIA elaborated on this step, stating:  "[W]e must first examine the statute itself to determine whether the inherent nature of the crime involves moral turpitude.  If the statute defines a crime in which moral turpitude necessarily

5

inheres, then the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends." *Matter of Ajami*, 22 I. & N. Dec. at 950 (citation omitted).  However, if the statute is "divisible," meaning that some offenses are crimes involving moral turpitude and others are not, the second step is to "look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the [alien] was convicted." *Id.*

In New York, a person is guilty of menacing in the second degree when:

> (1) He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or (2) he or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death . . . .

N.Y. Penal Law § 120.14.  In reviewing this statute, the BIA found as follows:

> [T]he respondent's 2001 conviction for menacing in violation of New York Penal Law § 120.14-1 constitutes a crime involving moral turpitude because it facially involves an individual threatening violence against another person with the evil purpose of terrorizing someone[]. *See generally, Matter of Danesh*, 19 I. & N. Dec. 669 (BIA 1988) (moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general).  We agree with the Immigration Judge that intentionally placing or attempting to place another person in reasonable fear of physical injury by displaying a dangerous weapon or what appears to be a dangerous weapon is the type of base and depraved behavior that involves morally turpitudinous conduct.  As such, we agree with the Immigration Judge that New York Penal Law § 120.14-1 is not a divisible statute and that a conviction for violating this statute is a conviction for a crime involving moral turpitude.

(BIA Op. at 2-3) (footnote omitted).  Thus, it is clear from the BIA's decision, that the BIA found the New York menacing statute categorically defines a crime involving moral turpitude.

Employing the categorical approach, this Court agrees with the BIA that menacing in the second degree categorically involves moral turpitude.  The BIA, in a case in which the respondent was convicted of aggravated stalking,[4] held that "the intentional transmission of threats is evidence of a vicious mind or a corrupt mind."[5]  *Matter of Ajami*, 22 I. & N. Dec. at 952.  The Eighth Circuit, in a case involving the crime of terroristic threats,[6] held that

---

[4]The relevant Michigan statute stated in relevant part:

> An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances: . . . (t)he course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the victim's household.

*Matter of Ajami*, 22 I. & N. Dec. at 951 (quoting Mich. Comp. Laws Ann. § 750.411i(2)(c)).

[5]Although the statute in *Matter of Ajami* required that the violator pursue a course of conduct, rather than a single act, in order to be convicted of aggravated stalking, this Court believes that does not detract from the depravity of a single instance of attempted menacing under the New York statute.  As the Eighth Circuit persuasively stated in *Chanmouny*, there is no "material distinction" between a single instance or multiple instances of threatening violence when determining whether a person acted with vicious motive.  *Chanmouny v. Ashcroft*, 376 F.3d 810, 814 (8th Cir. 2004).

[6]The relevant Minnesota statute stated in part:

> Whoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror . . . may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000 or both.

*Chanmouny*, 376 F.3d at 812 (quoting Minn. Stat. § 609.713, subd. 1).

"threatening a crime of violence against another person with the purpose of causing extreme fear . . . falls within the category of offenses requiring a vicious motive or evil intent." *Chanmouny v. Ashcroft*, 376 F.3d 810, 814 (8th Cir. 2004).  Because the conduct and crimes involved in those cases are sufficiently similar to this case, and the Court finds their reasoning and holdings persuasive, this Court holds that attempting to threaten a person with what appears to be a dangerous weapon for the purpose of placing that person in reasonable fear of physical injury evinces an evil intent or corrupt mind.  Consequently, N.Y. Penal Law § 120.14 sets out a crime that necessarily involves moral turpitude.

Campbell attempts to dissuade this Court from reaching that conclusion by arguing that the New York statute is divisible.  He asserts that the statute as written is "overbroad and encompasses both conduct that is inherently evil and conduct which in certain circumstances is not inherently of a turpitude (sic) nature."  (Petitioner's Br. at 9).  Campbell appears to suggest that the statute encompasses conduct lacking the requisite evil intent.  This Court disagrees.

The New York statute as written requires evil intent.  It encompasses both intentionally menacing a person and attempting to menace a person.  There is no dispute that intentionally menacing a person requires an evil intent.  Further, attempting to menace a person requires an evil intent.  As the Third Circuit recognized in *Knapik*, "[u]nder New York law, a 'person is guilty of an attempt to commit a crime when, with *intent* to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime."  *Knapik*, 384 F.3d at 91 (quoting *People v. Kassebaum*, 95 N.Y.2d 611 (2001)) (emphasis added).  Thus, whether a person is convicted of intentional or attempted menacing, the statute requires that the person demonstrate an evil intent.

Campbell argues this case is analogous to *Knapik v. Ashcroft*, 384 F.3d 84 (3d Cir. 2004). *Knapik*, however, is inapposite.  Knapik was convicted of attempted reckless endangerment. Although the Third Circuit expressed its belief that a conviction for reckless endangerment could involve moral turpitude because of aggravating factors, it concluded that attempted reckless endangerment was a nonexistent crime.  Essentially, it found that "[a] person cannot intend to commit a criminally reckless act."  *Id*. at 91.  Here, reckless behavior, by itself, is not punishable under the New York menacing statute; it requires an intentional act.

Campbell takes the position that attempted menacing, like attempted reckless endangerment, is a crime without intent.  According to Campbell, because menacing under the N.Y. statute includes attempting to place someone in fear, his plea to "attempted menacing" means that he was convicted of only "an *attempt to attempt* to place someone in fear." (Petitioner's Br. at 10) (emphasis in original).  This argument is absurd.  The relevant statute in *Knapik* did not include an attempt violation within its plain language.  Here, the New York statute does.  Therefore, Campbell's conviction of attempted menacing clearly means that he was convicted of attempting to place someone in fear.  Any argument to the contrary is mere sophistry.

Campbell argues that evil intent requires that the violator possess an intent to cause serious bodily harm or use a deadly weapon.  In other words, Campbell suggests that an evil intent under the menacing statute cannot exist unless the violator intends to carry through with his or her threats of violence.  This Court disagrees.  First, as a matter of policy, Campbell offers no reason why threatening a person with physical violence should not be considered an "inherently base, vile, or depraved" act "contrary to the accepted rules of morality and the duties

9

owed between persons or to society in general." *Matter of Ajami*, 22 I. & N. Dec. at 950.

Second, neither *Matter of Ajami* nor *Chanmouny* were predicated on the fact that the violator

intended to actually physically injure the victim or use a deadly weapon against the victim.

Rather, both found the crimes at issue to involve moral turpitude because the violator

purposefully placed his victim in fear of physical injury.[7]  *See Matter of Ajami*, 22 I. & N. Dec. at

952; *Chanmouny*, 376 F.3d at 814.

Campbell argues that BIA case law requires an actual dangerous weapon be used before a

crime can involve moral turpitude.  (Petitioner's Br. at 11).  However, the cases Campbell cites

in support of that proposition concern whether *assault* should be considered a crime involving

moral turpitude when the violator was not charged with using a weapon.  Because this case does

not involve a conviction for assault, this argument is unavailing.  Further, regardless of whether a

dangerous weapon or an object that looks like one is used when menacing a person, the

perpetrator's intent to threaten and cause fear in another is no less real or in any way diminished.

Therefore, the real-versus-fake weapon distinction is a distinction without a difference.

In short, the New York statute categorically defines menacing in the second degree as a

crime involving moral turpitude.  Thus, Campbell's attempted menacing conviction is for a crime

involving moral turpitude.  As a result, the Court need not and will not analyze his record of

conviction.

---

[7]For those same reasons, Campbell's argument that *Matter of Ajami* is distinguishable
because the Michigan statute required a credible threat to kill and the statute in suit does not is
without merit.

10

## II.      Petitioner Is Ineligible For Relief Under Former § 212(c) And § 240A(a)

In an attempt to evade the ramifications of being convicted of two crimes involving moral turpitude, Campbell applied for a waiver of inadmissibility for his controlled substance conviction under former § 212(c)[8] and cancellation of his removal for his attempted menacing conviction under § 240A(a).[9]  The IJ denied this relief as pretermitted, and the BIA affirmed, relying in part on *Matter of Balderas*, 20 I. & N. Dec. 389 (BIA 1991).

Section 240A(c)(6) states in relevant part:

> (c) Aliens ineligible for relief. The provisions of subsections (a) and (b)(1) shall not apply to any of the following aliens:

---

[8]Former § 212(c) read in part as follows:

> (c) Nonapplicability of subsection (a)(1) to (25), (30), and (31). Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(c)).  . . .

8 U.S.C. § 1182(c) (repealed by Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996)).

[9]Section 240A(a) states:

> (a) Cancellation of removal for certain permanent residents. The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien –
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a).

> (6) An alien whose removal has previously been cancelled under
> this section or whose deportation was suspended under section
> 244(a) or who has been granted relief under section 212(c), as such
> sections were in effect before the date of the enactment of the
> Illegal Immigration Reform and Immigrant Responsibility Act of
> 1996.

8 U.S.C. § 1229b(c).

Campbell argues that the BIA erred in applying § 240A(c)(6) to this case because, unlike

*Matter of Balderas*, where the alien was previously denied relief under § 212(c) and then applied

for relief under § 240A(a), Petitioner seeks relief under both sections simultaneously.[10]

Campbell urges that the plain language of the statute does not apply to this case, "as the plain

language of § 240A(c)(6) refers only to aliens whose removal was *previously* cancelled."

(Petitioner's Br. at 19) (emphasis in original).

It is this Court's reasoned determination that § 240A(c)(6) precludes the very relief

Campbell seeks in this case. This Court agrees with Campbell that "Congress enacted §

240A(c)(6) to prevent aliens from availing themselves separately of both INA § 212(c) and INA

§ 240A(a)." (Petitioner's Br. at 21). What Campbell fails to realize is that this rationale applies

with equal force to granting simultaneous relief under both provisions.

Section 240A(c)(6) clearly delineates relief under § 240A(a) as a mutually exclusive

alternative to relief under § 212(c). The "previously cancelled" language that Campbell so

heavily relies upon does not pertain to relief under § 212(c), but prior relief under § 240A(a). *See*

---

[10]Campbell does not dispute that under *Matter of Balderas*, if he had previously been
granted relief under § 212(c), he would be precluded from obtaining relief under § 240A(a). *See*
20 I. & N. Dec. at 393. Nor does he dispute that even if he received a waiver under § 212(c), his
controlled substance conviction would not be expunged and, therefore, could still be considered
as a crime involving moral turpitude for the purpose of his application to cancel removal under §
240A(a). *See id.* at 391.

8 U.S.C. § 1229b(c)(6) (stating that an alien "whose removal has previously been cancelled *under this section*" is ineligible for relief) (emphasis added). The pertinent language applicable to this situation states that § 240A(a) relief cannot be granted to an alien "who has been granted relief under § 212(c)." *Id.* Under this plain language, Campbell is not entitled to relief under both sections simultaneously.[11]

Further, to the extent that it could be argued that the statute is unclear on its face whether it precludes granting simultaneous relief under §§ 212(c) and 240A(a), the outcome remains the same. Under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), when congressional intent is ambiguous, the Court must determine whether an agency's action is based on "a permissible construction of the statute." *Id.* at 843. Given the clearly articulated policy of precluding § 240A(a) relief when § 212(c) relief has been granted, the Court finds that the BIA's construction of § 240A(c)(6) to preclude granting simultaneous relief under both sections is both permissible and reasonable.

In short, the BIA did not err in pretermitting Campbell's applications for relief from removal.

---

[11]Campbell's reliance on *Matter of Gabryelsky*, 20 I. & N. Dec. 750 (BIA 1993) for the proposition that an alien may apply for more than one waiver simultaneously is not informative of the situation before the Court. *Matter of Gabryelsky* did not involve attempting to combine § 212(c) relief with § 240A(a) relief. Rather, it addressed combining an adjustment of status under § 245(a) with a waiver of removal under § 212(c). *Id.* at 752. In stark contrast to *Matter of Gabryelsky*, where the alien was statutorily eligible for relief under both sections, as determined above, § 240A(c)(6) renders Campbell ineligible for combining remedies in this case.

III.    **Petitioner's Due Process Claim Is Without Merit**

The government moves to dismiss Count I of Campbell's Verified Complaint and Habeas Corpus Petition.  Count I alleges that the "BIA's decision ordering Mr. Campbell from the U.S. was a result of fundamentally unfair proceedings and a violation of the INA and Due Process." (Compl. at ¶ 29).  Campbell has not opposed the government's request.

Count I appears to be predicated on two arguments:[12] (1) the IJ considered the government's Form I-261, charging Campbell with being removable for being convicted of two crimes involving moral turpitude, even though it was filed after a deadline set by the IJ;[13] and (2) proceedings before the IJ were delayed without reason from July 25, 2003 to February 27, 2004 even though Campbell's applications for relief under §§ 212(c) and 240A(a) were pending.  (*Id.* at ¶ 22).  Neither argument is persuasive.  With respect to the Form I-261, as the BIA noted, the applicable regulation allows the government to file an additional charge "[a]t any time during . . . removal proceedings".  (BIA Op. at 1); 8 C.F.R. § 1003.30.  Therefore, the IJ's acceptance and consideration of the Form I-261 was permissible.  As for the delay in adjudication, it was caused by Campbell's own counsel who requested and agreed to an adjournment until February 27, 2004 so that Campbell's psychologist could be given the opportunity to testify before the IJ.  (*See* 7/25/03 Tr. at 50-53).  Accordingly, Count I lacks merit and must be dismissed.

---

[12]Without any opposition from Campbell, and based on his vaguely worded complaint, see Complaint at ¶¶ 28-29, it is impossible to decipher what allegations Campbell asserts support Count I.  Therefore, the Court assumes that Campbell recapitulates the arguments he made before the BIA regarding his due process rights rather than raise new issues in this appeal, which would be improper and beyond this Court's purview.

[13](Compl. ¶¶ 16-18).

**CONCLUSION**

For the aforementioned reasons, the BIA's decision is affirmed and Petitioner's Verified

Complaint and Habeas Corpus Petition is dismissed in its entirety.


**Dated:** May 19, 2005                         s/ William J. Martini                
                                                **William J. Martini, U.S.D.J.**

15